UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANASTASIA JOY STEIN,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[1]<br><br>Defendant. | No.  2:24-cv-01007-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  ECF No. 1.  Pending before the court are the parties' cross-motions for summary judgment.  ECF Nos. 14, 15.[2]  For the reasons provided below, plaintiff's motion for summary judgment is granted in part, and the matter is remanded to the agency.

////

////

---

[1] Frank Bisignano is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 6.

1

## I. Background

On July 2, 2021, plaintiff filed an application for disability insurance benefits under Titles II and XVI of the Social Security Act, alleging disability beginning October 27, 2020. Administrative Record (AR) 17, 265-72.[3] Plaintiff alleged disability due to post-traumatic stress disorder, depression, lower back pain, bilateral carpal tunnel syndrome, irregular heartbeat, asthma, bilateral planta fasciitis, and anemia. AR 122, 124, 311-12. Plaintiff's application was denied on November 8, 2021, AR 190-94, and her request for reconsideration was denied on March 3, 2022. AR 196-204. She requested a hearing before an Administrative Law Judge, which was held by telephone on February 7, 2023. AR 75-120, 205-06, 244-48. On August 2, 2023, the ALJ issued a decision finding plaintiff not disabled. AR 14-42. Plaintiff sought review to the Appeals Council, which denied review on March 12, 2024, AR 1-6, and, on April 3, 2024, plaintiff initiated the instant action. ECF No. 1.

## II. Legal Standard

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

////

////

---

[3] Defendant lodged the administrative record on July 24, 2024. ECF No. 10.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC,

age, education, and work experience. 20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

2003).  Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

### III. The ALJ's Findings of Fact and Conclusions of Law

In his August 21, 2023 decision, the ALJ found plaintiff not disabled and made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since October 27, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: asthma; chronic obstructive pulmonary disease (COPD); carpal tunnel syndrome; depressive disorder; and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) such that she can lift and carry 20 pounds occasionally and 10 pounds frequently; and can stand and walk six hours out of an eight-hour workday; she can sit six hours out of an eight-hour workday; she can occasionally climb, stoop, kneel, crouch, and crawl; she can frequently balance; she can occasionally perform fine fingering with the dominant right upper extremity; she must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; she must avoid concentrated exposure to workplace hazards, such as dangerous machinery and unprotected heights; she can understand, remember, and carry out simple instructions; she can tolerate occasional interaction with coworkers; she can tolerate no interaction with the general public;

and she can tolerate occasional workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 22, 1977 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 27, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 19-38.

### IV.    Analysis

Plaintiff raises three issues on review. First, plaintiff asserts that the ALJ erred in finding plaintiff's lumbar facet arthropathy with ligamentous buckling at L4-L5 "not severe" at step two of the sequential evaluation, and that such error was not harmless. ECF No. 14 at 6. Second, plaintiff argues that the ALJ erred in his analysis of plaintiff's RFC insofar as he discounted the impairments relating to her asthma and COPD. ECF No. 14 at 11-16. Finally, plaintiff asserts that the ALJ erred in his evaluation of the medical source opinion of examining provider, Montez McCarthy, Psy.D., when determining plaintiff's RFC. ECF No. 14 at 6, 16-23. The court

1  concludes that plaintiff has shown she is entitled to summary judgment and remand on one of her
2  claimed grounds.

3          **A. Claimed Error in Step Two Determination**

4          At step two, the ALJ must determine whether the claimant had severe impairments during
5  the period for which she seeks disability benefits. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment
6  is severe if it "significantly limits" an individual's "ability to do basic work activities." 20 C.F.R.
7  § 404.1520(c). The purpose of step two is screen out frivolous claims by "identifying at an early
8  stage those claimants whose medical impairments are so slight that it is unlikely they would be
9  found to be disabled even if their age, education, and experience were taken into account."
10 *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). As such, to succeed at step two, a claimant need
11 only make a de minimus showing to establish that her impairment is severe within the meaning of
12 the regulations. *Glanden v. Kijakazi*, 86 F.4th 838, 843-44 (9th Cir. 2023); *Webb v. Barnhart*,
13 433 F.3d 683, 686 (9th Cir. 2005); *see also Bowen*, 482 U.S. at 147.

14         Here, plaintiff takes issue with the ALJ's finding at step two, that plaintiff "has the
15 following severe impairments: asthma; chronic obstructive pulmonary disease (COPD); carpal
16 tunnel syndrome; depressive disorder; and posttraumatic stress disorder (PTSD)," AR 21, because
17 it was premised on the ALJ's having found plaintiff's "medically determinable impairment of
18 degenerative disc disease of the lumbar spine . . . nonsevere because it does not significantly limit
19 the ability to perform basic work activities for 12 consecutive months." AR 21; *see* ECF No. 14 at
20 8. Plaintiff argues that the latter finding was unreasonable because it was unsupported by the
21 evidence and, as such, remand is appropriate to develop the record adequately. ECF No. 14 at 6-
22 11.

23         Plaintiff's argument fails as a matter of law. As the Court of Appeals has explained, step
24 two of the ALJ's sequential analysis serves merely as a screening function and, if a claim survives
25 step two's screening, the ALJ's findings at step two do not define the scope of the ALJ's analysis
26 in the remainder of the steps. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). More
27 specifically, whether a particular impairment is determined to be "severe" or "not severe" at step
28 two is immaterial to the ALJ's determination of a claimant's RFC, which "'consider[s] limitations

1    and restrictions imposed by all of [the claimant's] impairments, even those that are not 'severe.'"
2    *Id*. at 1049 (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*,
3    Social Security Ruling ("SSR") 96-8p). Ergo, where a claim has not been denied at step two,
4    alleged error at step two can never be cause for remand because, once the claimant has cleared the
5    step-two hurdle, the ALJ's findings at that step have no continued legal relevance to the findings
6    in the subsequent steps nor to, ultimately, the determination of disability. *Ibid*.; *see M.M. v.
7    O'Malley*, 732 F. Supp. 3d 1126, 1133 (N.D. Cal. 2024).

8        Plaintiff's claim of reversible error at step two, therefore, fails. Plaintiff acknowledges
9    that the ALJ found at step two that she did possess severe impairments and did not deny the claim
10   at this step. *See* ECF No. 14 at 1-2. Although implicit in this determination was the ALJ's
11   additional finding that plaintiff's degenerative disc disease was not severe, that finding caused no
12   harm to plaintiff, as her claim was not denied at step two. *See Buck*, 869 F.3d at 1048-49.
13   Consequently, even if that finding was in error, such error is not cognizable as a basis for remand.
14   *See ibid*.

15       Plaintiff briefly argues that the ALJ improperly failed to account for her degenerative
16   spinal disc disease when conducting the step five analysis, ECF No. 14 at 11, and, in her Reply
17   brief, argues that the record further indicates that the ALJ erroneously failed to account for
18   plaintiff's degenerative spinal disc disease when determining her RFC. ECF No. 17 at 5.
19   Arguments raised for the first time in a reply brief are not properly before the court and cannot be
20   the basis for relief. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006); *Cedano–Viera
21   v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003); *Eberle v. City of Anaheim*, 901 F.2d 814,
22   818 (9th Cir. 1990); *Anderson v. Colvin*, 223 F. Supp. 3d 1108, 1131 (D. Or. 2016). Nonetheless,
23   plaintiff's arguments fail on the merits. Plaintiff does not show error in the ALJ's RFC or step 5
24   analyses. Although the ALJ did not discuss plaintiff's nonsevere degenerative disc disease
25   specifically in his discussions of the RFC determination and the step 5 analysis, the ALJ stated
26   that he considered plaintiff's nonsevere impairments, including her spinal disc disease, when
27   determining her RFC and, in turn, whether she was disabled at step 5, AR 22, 25, 37, and, in his
28   step 2 analysis, which identified the specific reasons from the record evidence why he discounted

plaintiff's testimony describing the severity and duration of her purported limitations on use of her back due to the disc disease. AR 21. Thus, the entirety of the ALJ's RFC and step 5 determinations are supported by substantial evidence. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); AR 17-38. *See also* AR 394-400, 417, 511-14, 576, 809-12, 829-31, 857; *see* AR 21 (citing same).

Plaintiff also fails to show any error was not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Despite finding plaintiff's spinal disc disease not severe, the ALJ also found plaintiff only capable of performing light work, with limitations on her capacities to lift objects, climb, stoop, kneel, crouch, and crawl. AR 25. Plaintiff fails to identify how the RFC or step 5 determinations would have differed in a way that would have been more favorable to her, had the ALJ found her degenerative disc disease to have been severe. *See Shinseki*, 556 U.S. at 409. As such, she fails to prove that she was prejudiced in some way by the claimed error. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (plaintiff "does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for [plaintiff's] injuries in some unspecified way."). For all of these reasons, plaintiff's claim of error at step two fails.

### B. Challenges to RFC Determination

#### 1. Plaintiff's Breathing Dysfunction

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ, without specific, clear, and convincing reasons, discounted plaintiff's testimony describing the severity and extent of her breathing dysfunction symptoms. ECF No. 14 at 14-16. Specifically, plaintiff argues that the ALJ unreasonably rejected plaintiff's testimony that she could not work 5 to 7 days per month due to her chronic obstructive pulmonary disease (COPD). ECF No. 14 at 14-15 (citing AR 27-29, 102-03). Upon review of the record, the court concludes the ALJ's determination was supported by substantial evidence. *See Biestek*, 587 U.S. at 99.

In support of her application for disability, plaintiff presented evidence of her diagnosis of COPD, its effects on her functioning, and her treatment for same. Among this evidence was

plaintiff's hearing testimony that, inter alia, she could not work five to seven days each month due to her COPD symptoms. AR 102-03. The ALJ found that plaintiff had COPD and that it constituted a severe impairment, AR 20, and found her to have an RFC to perform light work with limitations on her ability to carry heavy objects, climb, stoop, kneel, crouch, and crawl and limited by the requirement that she avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. AR 25. In reaching this determination, the ALJ considered plaintiff's testimony describing the severity of her impairments in functioning due to COPD, as well as the treatment records for same that she had submitted. AR 27-29. He concluded that, although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." AR 29. Specific to plaintiff's testimony at issue here, the ALJ explained,

> The claimant further alleged that she has difficulty breathing due to chronic obstructive pulmonary disease (COPD) and she claimed that breathing problems would prevent her from working five to seven days per month (Testimony). Although the medical evidence of record shows the claimant has a history of medical treatment for asthma and COPD (Exs. 1F, pp. 5-10; 2F, pp. 67-70; 4F, pp. 7-54; 5F, pp. 45-48; 10F, pp. 2-7), the undersigned finds little to no objective medical evidence that supports the loss of functioning due to COPD alleged by the claimant. The claimant's medical treatment records reflect limited and intermittent objective findings of tachypnea and/or wheezing in November 2020 (Ex. 1F, p. 7), April 2021 (Ex. 4F, p. 26), May 2021 (Ex. 4F, p. 23), and January 2022 (Ex. 4F, pp. 8-9). Despite these findings, the claimant exhibited no respiratory distress and her pulmonary effort remained normal (Exs. 1F, p. 7; 4F, pp. 8-9, 23, 26). While the claimant's medical history and objective findings related to asthma and COPD may support a degree of functional limitation, the undersigned finds little to no additional and persistent objective medical findings that support the severity of breathing-related symptoms and loss of functioning alleged by the claimant.

AR 31. Additionally, plaintiff's claims concerning the intensity and duration of her respiratory symptoms did not accord with evidence of her daily activities, including her work history. *Ibid*. The ALJ also observed that plaintiff's treatment records indicated that her COPD symptoms could be sufficiently controlled by compliance with proscribed treatment. AR 31-32. Finally, the ALJ found persuasive the prior administrative medical findings of Dr. H. Arora, which were consistent with the record as a whole, and which had recommended the same RFC that the ALJ

ultimately found here. AR 32-33.

On this record, substantial evidence supported the ALJ's decision not to include in the RFC the limitation that plaintiff cannot work five to seven days per month. "When a claimant presents objective medical evidence establishing an impairment 'that could reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons.'" *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (cleaned up)). Here, the ALJ provided clear and convincing reasons, based on the record before him, that justify the ALJ's determination that the severity of plaintiff's respiratory impairments was not as debilitating as she had described in her testimony. He observed that although some of plaintiff's medical records indicated treatment for wheezing or tachypnea after the date of claimed disability onset, AR 31 (citing AR 391, 590-91, 605, 608), in these visits, plaintiff's overall lung functioning was described as reflecting normal pulmonary effort and no respiratory distress. AR 31 (citing AR 391, 590-91, 605, 608). The ALJ also observed that plaintiff's treatment records indicated that her symptoms of pulmonary distress appeared to respond to prescribed treatments. AR 31 (citing AR 389-94, 500-03, 588-636, 798-801, 892-97). He also observed that her evidence of daily activities, particularly her employment history, belied her testimony that her symptoms of respiratory distress were so intense and persistent as to preclude her from activities for five to seven days per month beginning at the claimed disability onset date. AR 31. These reasons by the ALJ are sufficiently clear and convincing to justify the ALJ's rejection of part of plaintiff's testimony. *See, e.g., Smartt*, 53F.4th at 497-500 (holding ALJ had clear and convincing reasons to discount claimant's subjective pain testimony where the objective medical evidence and evidence of claimant's daily activities was inconsistent with the claimed limitations and plaintiff had followed a conservative treatment plan for her claimed pain); *Molina*, 674 F.3d at 1113 (holding ALJ reasonably discounted claimant's testimony where it conflicted with evidence of claimant's daily activities); *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012) (holding ALJ was reasonable in relying on objective medical evidence of claimant's functioning over claimant's subjective testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161

1  (9th Cir. 2008) (holding ALJ reasonably relied on physician's assessment of claimant's lifting capability in lieu of claimant's self-report, as "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of claimant's allegations of disabling pain, as they conflicted with records from her physical examinations). Plaintiff has not shown that in this respect the ALJ's RFC finding lacked substantial evidence to support it.

### 2. Failure to Properly Evaluate Opinion of Dr. Montez McCarthy

Plaintiff argues that the RFC determination was made in error because the ALJ failed to include, and failed to account for the exclusion of, certain clinical opinions expressed by Dr. Montez McCarthy. Among other findings, Dr. McCarthy found that plaintiff had a moderate-to-marked limitation in her "ability to maintain regular attendance in the workplace, deal with the usual stresses encountered in competitive work, and to complete a normal workday or workweek without interruptions resulting from any psychiatric condition." ECF No. 14 at 18 (citing AR 867). The ALJ partially credited this opinion, finding that only a moderate limitation in these areas was supported by the evidence, but rejected the finding that plaintiff had marked limitation in these areas. AR 35-36. Plaintiff argues that, nonetheless, the RFC erroneously failed to account for even moderate limitations in these areas. ECF No. 14 at 18. Defendant responds that the moderate limitations were encapsulated in the RFC's provisions that plaintiff "can understand, remember, and carry out simple instructions; she can tolerate occasional interaction with coworkers; she can tolerate no interaction with the general public; and she can tolerate occasional workplace changes." AR 25; *see* ECF No. 15 at 14-18.

The record supports Defendant. The limitations expressed in the relevant area in the RFC—relating to plaintiff's abilities vis-à-vis instructions, interactions with coworkers and the public, and tolerance of workplace changes generally—were reasonable and consistent with the evidence before the ALJ, including Dr. McCarthy's findings. Although they did not employ the exact language or limitations utilized by Dr. McCarthy, they encapsulated the moderate impairments Dr. McCarthy identified in plaintiff's abilities to follow instructions, work with others, and stay on task. *See generally Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

2008) (ALJ must translate the limitations expressed by medical providers into a succinct RFC); *see, e.g.*, *Spencer v. Kijakazi*, No. 1:21-cv-00065-AWI-BAM, 2022 WL 4482567, at *7 (E.D. Cal. Sept. 27, 2022) ("courts within this district have found that a serious or marked impairment in the ability to deal with the usual stress encountered in a competitive workplace is adequately addressed by a limitation to 'simple repetitive tasks'" (collecting cases)), *report and recommendation adopted*, 2023 WL 184974 (E.D. Cal. Jan. 13, 2023); *Garza v. Comm'r of Soc. Sec.*, No. 1:21-cv-00403-BAK (SAB), 2022 WL 2974691, at *11 (E.D. Cal. July 27, 2022) ("Likewise, the Ninth Circuit and its district courts have also concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in an RFC of simple, repetitive tasks." (collecting cases)).

To the extent that the RFC failed to include any limitation on plaintiff's ability to maintain regular work attendance, as indicated by Dr. McCarthy's findings, that failure was also supported by the substantial evidence. *See* ECF No. 14 at 18-20; ECF No. 17 at 1-4. Although the ALJ found Dr. McCarthy's findings partially persuasive, he also found persuasive the findings of Dr. Ying, who had concluded that plaintiff could "understand and carry out simple instructions; . . . sustain simple tasks for 40-hour work weeks; . . . tolerate a limited public contact setting; and . . . adapt to changes in a work setting," as those findings were consistent with plaintiff's overall treatment history. AR 34. It was not error for the ALJ to endeavor to reconcile the disparate medical opinions before him in light of the totality of the evidence; in fact, this approach reflects the ALJ undertaking the very analysis the regulations require of him. 20 C.F.R. §§ 404.1520(e), 404.1520c(a), 404.1527(d)(2), 404.1545(a), 404.1546(c); 416.945(a); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict"); *see generally Vertigan*, 260

1  F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to
2  determine residual functional capacity."). Thus, the fact that the RFC does not track exactly the
3  limitations expressed by Dr. McCarthy does not render the ALJ's determination lacking in
4  substantial evidence. *See Stubbs-Danielson*, 539 F.3d at 1174.

### 3. Partial Rejection of Dr. McCarthy's Opinion

Finally, plaintiff argues that the RFC determination was not premised on substantial evidence, because the ALJ rejected Dr. McCarthy's opinion insofar as it identified marked limitations in plaintiff's mental functioning, without addressing the supportability of Dr. McCarthy's opinion. ECF No. 14 at 20-23. The court finds the ALJ's determination flawed in this respect, such that remand is appropriate.

Dr. McCarthy rendered a clinical opinion of plaintiff's mental functioning after having examined her personally and reviewed some of her medical records. AR 860-61. In his functional assessment of plaintiff, he concluded she showed moderate to marked limitations in her "[a]bility to understand, remember, and perform detailed and complex written and oral instructions over an eight-hour day, 40-hour work week without emotionally decompensating;" her "[a]bility to maintain regular attendance in the workplace, deal with the usual stresses encountered in competitive work, and able to complete a normal workday or workweek without interruptions resulting from any psychiatric condition(s);" her "[a]bility to relate and interact with coworkers and the public." AR 867.

In considering this opinion, the ALJ credited that plaintiff had moderate limitations in these areas, but rejected Dr. McCarthy's opinion that plaintiff's limitations were marked. In explaining the reason for the partial rejection, the ALJ found:

> the marked limitations assessed by Dr. McCarthy are overly restrictive and not supported by any other objective medical evidence in the case record. As mentioned above, the claimant received mental health treatment for posttraumatic stress disorder (PTSD) and depression, including psychotherapy and medication management (Exs. 2F, pp. 51-56, 86-87, 94-97, 101-102, 106-107, 111-122, 130-134, 141-142; see also 5F, pp. 32-33, 64-65, 72-75, 79-80, 84-85, 89-100). However, the claimant's treatment record reflect mental status examination findings that were limited to rapid or slow speech and anxious or depressed mood, with other mental status findings remaining unremarkable and within normal limits, including cooperative attitude, normal thought process, normal thought content, intact memory, adequate attention, developmentally appropriate

>reasoning, good impulse control, developmentally appropriate judgment and insight, and no suicidal thoughts (Ex. 2F, pp. 53, 55, 87, 95, 97, 102, 107, 112, 114, 116, 122). In light of the limited positive, objective mental status findings demonstrated in the case record, the undersigned finds the assessment of marked functional mental limitations determined by Dr. McCarthy is inconsistent with and not supported by medical evidence as a whole.

AR 36.

Under current regulations, the factors the agency employs for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important of these factors are "supportability and consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence. Consistency means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 791-92 (internal citations and quotations omitted). The regulations provide that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence," which includes that the ALJ must articulate how persuasive they find all provided medical opinions and explain the supportability and consistency factors of those opinions. *Id.* at 792; *see* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

////

Plaintiff argues that the ALJ's partial rejection of Dr. McCarthy's opinion was flawed in that it failed to address supportability, but only addressed consistency, when evaluating the persuasiveness of Dr. McCarthy's findings. ECF No. 14 at 20-23. Defendant does not dispute this. *See* ECF No. 15. The record demonstrates that the ALJ, in explaining why he rejected Dr. McCarthy's findings in part, only addressed the consistency factor, finding that Dr. McCarthy's findings that plaintiff suffered from marked limitations in certain areas of functioning were not credible because they were inconsistent with findings and treatments by other clinicians over time. AR 36 (citing treatment notes by other clinicians at AR 484-89, 519-20, 527-30, 534-35, 539-40, 544-55, 563-64, 574-75, 785-86, 817-18, 825-28, 832-33, 837-38, 842-53). The ALJ, however, failed to address, even implicitly, the extent to which Dr. McCarthy's findings were supportable in and of themselves. *See* AR 36; *see generally Jerome J. C. v. O'Malley*, 759 F. Supp. 3d 1091, 1109 (E.D. Wash. 2024) (deducing the ALJ's supportability finding from the record). This failure was legal error. 20 C.F.R. § 404.1520c(b)(2); *see Anna C. v. O'Malley*, 734 F. Supp. 3d 1123, 1133 (D. Or. 2024); *Lenord D. v. O'Malley*, 758 F. Supp. 3d 1266, 1276 (E.D. Wash. 2024); *Boeche v. Kijakazi*, No. 23-CV-918-RBM(BLM), 2024 WL 3430576, at *9 (S.D. Cal. July 15, 2024), *report and recommendation adopted sub nom. CHARLES B., Plaintiff, v. MARTIN O'MALLEY, Defendant.*, No. 3:23-CV-0918-RBM-BLM, 2024 WL 5701794 (S.D. Cal. Aug. 1, 2024) (collecting cases).

The record as a whole supports remand to the agency as a remedy. When error is established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."); *see generally Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule").

Here, based on the record before it, the court concludes that the rare circumstances that may result in a direct award of benefits are not present. *See Leon*, 880 F.3d at 1044; *Dominguez*, 808 F.3d at 407. Further administrative proceedings would serve a meaningful purpose by enabling the ALJ to properly evaluate the medical opinion of Dr. McCarthy, including the supportability of his opinion, and, based on that evaluation, to make any additional findings necessary to determine whether plaintiff is disabled within the meaning of the Social Security Act. *See Garrison*, 759 F.3d at 1020. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.

V. **Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted;
2. Defendant's cross-motion for summary judgment (ECF No. 15) is denied;
3. This matter is remanded for further proceedings consistent with this order.

Dated: September 12, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE